IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA J. STEPHENS, | § | |
| AS ADMINISTRATRIX OF THE | § | |
| ESTATE OF JAMES LEROY | § | |
| RUFFINS, A.K.A., JAMES LEROY | § | |
| JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1009-K |
| | § | |
| DALLAS COUNTY, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment, filed June 5, 2006. The court has reviewed and considered the motion, response, reply, summary judgment evidence, pleadings on file in this case, and the applicable law. Because Plaintiff has failed to raise a genuine issue of material fact with respect to any of her claims against Defendants, Defendants' Motion for Summary Judgment is **granted.**

I.    **Factual and Procedural Background**

The following relevant undisputed facts are presented in the summary judgment record:

James Leroy Ruffins, a.k.a James Leroy Johnson ("Johnson") was booked into the Dallas County Jail at approximately 3:30 p.m. on October 25, 2004. During Johnson's confinement in the jail, the University of Texas Medical Branch at

1

Galveston ("UTMB") provided medical care and treatment to inmates on the county's behalf, pursuant to a contract between UTMB and Dallas County.

At the time of booking, Johnson stated that he had a medical problem, and he was seen by Nurse Bill Burnett ("Burnett") during the central intake process. Johnson stated at that time that he had tuberculosis for a year in 1974, that he was a non-insulin dependent diabetic, and that he had congestive heart failure but did not know what medication he took for this condition. He also said that he had been diagnosed with hepatitis C, cirrhosis, high blood pressure, and also had a history of drug abuse.

Johnson reported that his diabetes was being treated with Glyburide, an oral diabetic medication, and that he was also taking a medication for high blood pressure, but he did not know what medication he took for this condition. He did not inform Burnett that he was taking any additional medications. As was provided by the standing orders of Dr. Steven Bowers, the jail's Medical Director, Burnett ordered that Johnson's vital signs and blood glucose be checked for three days.

Early the next morning, on October 26, 2004, a nurse assigned to the jail's infirmary reviewed Johnson's medical chart and made arrangements for his vital signs to be checked each shift for the next three days and for his blood sugar to be tested twice a day for 3 days. The nurse also put Johnson's chart in for review by a doctor.

Later that same day, Johnson's sister Barbara Stephens ("Stephens") went to the jail to deliver Johnson's medications. Stephens met with Officer Crump at the

jail. Officer Crump told Stephens that inmates at the jail were not permitted to have their own medications brought to them. Although Officer Crump told Stephens that jail inmates could not bring their own medications with them, his statement was incorrect. Stephens has presented summary judgment proof showing that the jail's policy actually permits inmates to continue on their current medications for 14 days following book-in.

Johnson's medical records show that no medications were provided to him on October 26, 27, 28, and 29. While Johnson was detained in the jail, Stephens called each day for reassurance that he was receiving his medications. Although she does not identify who she spoke with, she states that she was told Johnson was getting the needed medications.

On October 29, Johnson was seen by Nurse James Daughtery ("Daughtery") regarding his congestive heart failure, diabetes, and hypertension. Daughtery noted in Johnson's medical records that Johnson was set up for blood sugar and blood pressure checks, and that Stephens had been contacted for a list of Johnson's medications. Daughtery included this list of medications in Johnson's medical records. Also on October 29, Stephens signed an authorization allowing the release of Johnson's medical records to the jail, including a complete record of his medications. Daughtery then set Johnson up to see a doctor for evaluation and to prescribe medications.

Dr. Roy Reid ("Reid") saw Johnson on October 30 and ordered his medications and a metabolic profile. Reid further noted on Johnson's medical record that Johnson was started on his medications that day. On November 2, a complete metabolic panel was performed on a specimen of blood drawn from Johnson and he had a chest x-ray. The results of the blood test and x-ray were reported the next day, November 3, and Dr. Kathryn Flangin ("Flangin") also reviewed Johnson's medical chart that day.

On November 7, Johnson was seen in the jail infirmary by Nurse Candice Stewart ("Stewart"), who noted that Johnson was complaining about not getting all of his medications and was asking to see the doctor. Stewart further noted that Johnson had a list of medications he was taking before entering the jail, and that Johnson's medical records showed that he "is already on these med. as per his medication sheet." Stewart's note ends with a request that "MD please review and evaluate him."

The next day, Bowers asked Flangin to see Johnson. Flangin did so, and noted that Johnson had been off his medications for a few days, but was "now back on meds." She further stated that Johnson needed closer monitoring, and recommended that he be transferred back to the infirmary. Johnson was then transferred back to the infirmary that same day, November 8. Johnson was also seen in the infirmary that day by Nurse Deborah Watson ("Watson"). Watson noted Johnson's diagnoses of congestive heart failure, diabetes and cirrhosis of the liver, and additionally noted

that Johnson's scrotum was swollen, his abdomen was hard and swollen, and that he was short of breath. She reported these symptoms to Nurse Linda Moody ("Moody"), who ordered that two of his medications be increased. The initial increased dose of those two medications was given to Johnson that day, and also on November 9. Johnson also had an EKG on November 8, and additional lab work was ordered for the morning of November 9. Stephens visited Johnson on November 8, and also noticed that he appeared swollen.

In her clinic notes dated November 9, at 7:51 a.m., Moody noted that she had been advised the night before that Johnson was suffering from "worsening edema" and that increased medications had been ordered. Moody saw Johnson about three hours later on that same day, and concluded that Johnson had liver failure and probable liver cancer. Johnson told her he had been seen at Parkland Hospital's outpatient clinic. Her plan of treatment was to get Johnson's medical records from Parkland, stop Glyburide if his blood sugar was high and treat his diabetes with insulin instead, give him pain medications, and keep him off his feet with feet elevated. She also made changes to his medications, and ordered that he be sent to the Parkland clinic for his congestive heart failure, and to continue having his vital signs checked while he was in the jail. Later that afternoon, Johnson refused to have his vital signs taken or his blood sugar checked.

On the night of November 9, Nurse Katriena Blackman ("Blackman") received reports that Johnson was foaming at the mouth. Noting that he had been asleep all

5

day, Blackman tried to wake Johnson and get him out of bed, but Johnson was unable to get out of bed on his own. He was therefore brought out of his tank for observation. Nurse Anita Estes ("Estes") assessed Johnson at 10:00 p.m. that night, and found him somewhat incoherent. Estes notified Ramona Leach, P.A. ("Leach") of her observations, and Leach ordered that Johnson be transported to Parkland Hospital. Johnson was transported to Parkland via ambulance at 10:30 p.m. on November 9.

Johnson was admitted to Parkland due to "altered mental status." Parkland staff also noted "hepatitis C cirrhosis, history of hepatitis C, hypertension, [and] congestive heart failure." Johnson's record from Parkland also states that his medical history included "hepatitis C cirrhosis, hepatocellular carcinoma diagnosed in June 2004, hepatitis B, Type II diabetes mellitus, hypertension, [and] congestive heart failure." He died at Parkland on November 13, 2004.

On the day of Johnson's death, the medical examiner did an external examination of his body and determined that Johnson died of natural causes. She further stated that his death was caused by cirrhosis, hepatocellular carcinoma associated with hepatitis B and C infection, hypertension, heart disease and diabetes.

Stephens does not dispute the above facts, which are largely found in Johnson's medical records, as well as Stephens' own affidavit. In addition to the above facts, Stephens has submitted into the record historical information regarding the delivery of medical services to Dallas County Jail inmates, staffing issues faced by

the jail, the contract between Dallas County and UTMB, and various inspections and investigations conducted regarding conditions in the jail.  However, she does not explain how this evidence actually supports her claims, or how these facts specifically affected Johnson during his stay in the jail, beyond conclusory statements that these policies and practices caused Johnson's death.  As to the facts that specifically pertain to Johnson, Stephens' primary argument is that Defendants violated Johnson's civil rights because he did not receive his medications during part of his jail stay.

Stephens filed suit against Dallas County and Lupe Valdez ("Valdez") in her official capacity as Sheriff of Dallas County (collectively, "Defendants") on May 17, 2005.  In her Original Complaint ("Complaint") Stephens pleads federal claims under 42 U.S.C. §§ 1983 and 1988 along with various state law claims.  Defendants Dallas County and Valdez now move for summary judgment on all of Stephens' claims.

### II.   Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that

summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654 (1962).

### III.   Defendant's Motion for Summary Judgment

In support of their request for summary judgment, Defendants argue that the factual record in this case does not raise a genuine issue of material fact regarding Stephens' claims that Johnson was denied medical care in violation of his federal constitutional rights, and that she also cannot avoid summary judgment on her state law claims, because the county has not waived its sovereign immunity to liability on those claims.

#### A.   Stephens' Capacity to Sue on Behalf of Johnson's Estate

On summary judgment, Defendants argue that there is no evidence in the record that Stephens has the legal capacity to bring claims on behalf of her brother's estate. In response, Stephens has produced her affidavit, which states that she is administratrix of Johnson's estate. The court finds that this proof is sufficient to raise a genuine issue of material fact regarding Stephens' capacity to bring suit, and accordingly, does not grant summary judgment on these grounds.

### B.     Claims Against Valdez

Defendants state that Stephens' claims brought against Valdez in her official capacity are redundant because she has also sued the county. The court agrees.

Official capacity suits are merely another way of pleading an action against the entity that employs the individual or agent sued. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Smith v. Johnson,* 2005 WL 578470, *4 (N.D. Tex. 2005). In all respects but name, an official capacity suit is to be treated as a suit against the entity. *Turner v. Houma Municipal Fire and Police Civil Service Bd.,* 229 F.3d 478, 484 (5th Cir. 2000). The official capacity claims and the claims against the governmental entity essentially merge. *Id.* at 485. Consequently, in cases where the relevant governmental unit has also been sued, official capacity claims against individual officers or employees of that entity are merely a "reformulation" of the plaintiff's claims against the entity, and the official capacity claims are redundant. *Clark v. La Marque I.S.D.,* 184 F. Supp. 606, 612 (S.D. Tex. 2002); *see also Byrum v. City of Mesquite, Texas,* 2004 WL 733137, *1 n.1 (where city was sued, identifying individual officers as parties in their official capacities was "redundant" and "surplusage").

Because Stephens has sued Dallas County, her official capacity claims against Valdez are redundant. Therefore, as to these claims Defendants' Motion for Summary Judgment is **granted.** Stephens' official capacity claims against Valdez are **dismissed with prejudice.**

### C.   Federal Claim for Denial of Medical Care

The denial of medical care to a pretrial detainee such as Johnson involves an allegation of a deprivation of due process under the Fourteenth Amendment. *Fields v. City of South Houston,* 922 F.2d 1183, 1191 (5th Cir. 1991); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1186 (5th Cir. 1990). Stephens alleges that the County is liable under 42 U.S.C. § 1983 for failing to provide Johnson with his medications during part of the period of time he spent detained in the jail.

### 1.   Conditions of Confinement or Acts or Omissions?

The parties differ as to whether Stephens' section 1983 claim should be considered a "conditions of confinement" case or one involving specific acts or omissions allegedly causing harm to Johnson. When a detainee complains of the number of bunks in a cell, or mail or television privileges, that is best characterized as a complaint regarding general conditions of confinement. *Edwards v. Johnson,* 209 F.3d 772, 778 (5th Cir. 2000); *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997). In a "conditions of confinement" case, a constitutional violation arises only if the complained-of condition is not reasonably related to a legitimate, non-punitive governmental objective. *Scott,* 114 F.3d at 53.

However, where the complaint is concerning a particular act or omission of one or more officials, it should be categorized as an "episodic act or omission" case. *Edwards,* 209 F.3d at 778; *Scott,* 114 F.3d at 53. In an episodic act or omission case, an actor usually is interposed between the detainee and the municipality, such that

the detainee complains first of a particular act or omission by the actor, and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission. *Scott,* 114 F.3d at 53. In this type of case, a plaintiff must prove an underlying constitutional violation by showing that that individual actor or actors acted with subjective deliberate indifference. *Edwards,* 209 F.3d at 778; *Scott,* 114 F.3d at 54. Once a detainee has established an underlying constitutional violation, to hold the municipal entity liable it must show that the employee's act or omission resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights. *Scott,* 114 F.3d at 54, *citing Farmer v. Brennan,* 511 U.S. 825, 841 (1994).

Here, the court views this case as one involving episodic acts or omissions. Stephens has complained of a particular set of acts or omissions – that Johnson did not receive his required prescription medications for several days while detained in the jail. She now seeks to hold Dallas County liable for those acts or omissions of its employees by attempting to show that those acts or omissions flowed from an official policy or custom of the County. Therefore, the court will examine Stephens' section 1983 claim under the well-established "deliberate indifference" standard.

### 2. Elements of Municipal Liability Under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a governmental entity such as Dallas County can only be held liable if there is either an unconstitutional action by official

policymakers or a policy or custom that caused the deprivation of a constitutional right. *Monell v. Dept. of Soc. Svcs.,* 436 U.S. 658, 694 (1978); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004). Municipal liability on a claim brought under section 1983 requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell,* 436 U.S. at 694; *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001). The court will review the summary judgment evidence as to each of these elements.

### a. Policymaker

Stephens has alleged that the applicable policymakers were either Valdez or her predecessor Jim Bowles ("Bowles"). Dallas County has not disputed on summary judgment whether Valdez or Bowles was the official policymaker regarding medical care at the jail. Therefore, this undisputed evidence is viewed in the light most favorable to Stephens, the non-movant. *Diebold, Inc.,* 369 U.S. at 655. The court therefore assumes for purposes of summary judgment that Stephens has raised a genuine issue of material fact regarding the existence of a policymaker.

### b. Official Policy or Custom

Municipal policy for purposes of section 1983 liability may be found in a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Johnson,* 379 F.3d at 309, *citing*

*Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992). Alternatively, municipal policy under section 1983 can be a persistent, widespread practice of municipal officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Id.* Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Id.*

Stephens does not assert that Dallas County has an official policy that prevented Johnson from receiving his medications while he was detained in the jail. Rather, Stephens has generally alleged that there is a widespread failure to provide sufficient medical care to detainees, and that this failure is so common that it is actually a custom that represents county policy.

More specifically, she argues that other official customs of the jail were a) allowing intake security officers to perform initial medical and mental health screening of inmates; b) inadequate policy regarding medication administration and continuity of medical care received by inmates while incarcerated; c) continued and systematic policy of not meeting required staffing numbers in the jail; and d) having a policy, practice and/or procedure of not providing any training on the identification, and care for inmates with pre-existing medical conditions requiring continuous medical attention and needs. (Plaintiff's Response to Defendants' Motion for Summary Judgment, pp. 11-12; Plaintiff's Brief in Support of Her Response to

Defendants' Motion for Summary Judgment, p. 17). Stephens has pointed to specific record evidence regarding the staffing issues, but all of the other policies she has alleged are treated in a conclusory fashion in her response and brief.

As the non-movant, Stephens must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Adams v. Travelers Indemnity Co. of Connecticut,* 465 F.3d 156, 164 (5th Cir. 2006), *citing Celotex,* 477 U.S. at 323. The court is not obligated to comb the record in search of evidence that will permit her to survive summary judgment. *Adams,* 465 F.3d at 164; *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). While Stephens has identified evidence related to concerns about staffing levels, her section 1983 claim is based upon the jail's failure to provide medications to Johnson during his time in the jail, not the level of staffing present in the jail. Thus, the court finds that Stephens has failed to raise a genuine issue of material fact regarding whether Dallas County had an official policy or custom that jail inmates were not to be given needed medications, an essential element of Dallas County's liability under 42 U.S.C. § 1983.

  c.  **Underlying Constitutional Violation/Moving Force**

Finally, the court must evaluate the third element of municipal liability -- whether Johnson suffered a violation of his constitutional right to medical care, and whether an official policy or practice of Dallas County was a "moving force" behind that violation. *Piotrowski,* 237 F.3d at 578.

Inadequate medical care by a jail doctor can result in a constitutional violation under section 1983 when that conduct amounts to deliberate indifference to the detainee's serious medical needs, constituting the unnecessary and wanton infliction of pain. *Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir. 1999), *citing Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999). Under the deliberate indifference standard, a prison official is not liable for the denial of medical care unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris,* 198 F.3d at 159.

For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* Such indifference on the part of a government employee can be evidenced by intentionally denying or delaying access to medical care or by intentionally interfering with the treatment prescribed. *Id., citing Estelle v. Gamble,* 429 U.S. 97, 104-05. Liability requires more than ordinary lack of due care, and a showing of simple or even heightened negligence will not suffice to establish deliberate indifference. *Farmer,* 511 U.S. at 835; *Wilson v. Seiter,* 501 U.S. 294, 305 (1991); *Johnson,* 379 F.3d at 309. To be deliberately indifferent, an official must have the subjective intent to cause harm. *Mace v. City of Palestine,* 333 F.3d 621, 626 (5th Cir. 2003).

Here, Stephens has produced no evidence on summary judgment suggesting that any of the numerous medical staff members at the Dallas County jail who cared

for Johnson had the requisite subjective intent to harm him. Defendants have submitted Johnson's medical records on summary judgment, which show that he received almost daily medical care and monitoring throughout his time in the jail. Although it is undisputed that Johnson did not receive his medications for approximately four days, the undisputed summary judgment proof also shows that Johnson did not know most of the medications he was supposed to be taking, but jail medical staff took steps immediately upon his intake to determine what the needed medications were and to obtain those medications for him. When the jail received Stephens' written release to obtain Johnson's medication records on October 30, all of Johnson's medications were given to him that same day. The record further shows that jail staff adjusted Johnson's medications as his symptoms progressed, and prescribed additional medications for him. Stephens has not provided any summary judgment evidence that raises a material factual dispute concerning any of this evidence submitted by Defendants.

Viewing the factual record as a whole, the court does not find that the failure to give Johnson his medications over a four-day period even rises to the level of negligence. However, even if this omission did constitute negligence or medical malpractice, such a failure to practice due care does not support a finding of liability under section 1983. *See Farmer,* 511 U.S. at 835 (liability requires more than ordinary lack of due care); *Johnson,* 379 F.3d at 309 (a showing of simple or even heightened negligence will not suffice to establish municipality's liability under 42

16

U.S.C. § 1983); *Harris,* 198 F.3d at 159 (malpractice and negligent treatment do not rise to the level of a constitutional tort).

Finally, Officer Crump's misstatement of the rules regarding inmate medications, even when taken as true, also will not support a finding of liability against Dallas County. Stephens' summary judgment evidence shows that the jail's official policy was to allow new inmates their current medications for at least 14 days following book-in. Further, Stephens has produced no summary judgment evidence showing that Crump had subjective knowledge of Johnson's actual medical condition, and drew an inference from such knowledge that there was a substantial risk of serious harm to Johnson if he did not receive his prescription medications. Moreover, even if there were a basis for individual liability against Crump, Dallas County cannot be held liable for his actions on a theory of *respondeat superior. Monell,* 436 U.S. at 690; *Johnson,* 379 F.3d at 308-09. Based upon the summary judgment record and the applicable law, the court finds that Stephens has failed to raise a genuine issue of material fact regarding her claim that Johnson was unconstitutionally deprived of his right to medical care.

Stephens further attempts to support her section 1983 claim by arguing that the county failed to train its jail employees to care for persons with a serious illness, which she says "prevented non-medical jail official [sic] from obtaining the necessary medical health care for [Johnson]." This allegation is entirely conclusory, as Stephens has not identified specific facts or described any instances found in the summary

17

judgment record showing that non-medical jail personnel should have obtained medical care for Johnson but were not sufficiently trained to be aware of the need. *See Adams,* 465 F.3d at 164 (non-moving party must identify specific facts in the record to support her claims). Rather, the summary judgment record shows that Johnson received consistent and almost daily (and sometimes more than daily) medical care throughout his stay in the jail. The record further shows that Johnson's interactions regarding his medical issues were with the jail's medical, rather than non-medical staff. Stephens has not disputed any of these facts.

Because Stephens has not set forth sufficient evidence on summary judgment to raise a material issue of fact regarding either the existence of a custom or policy or an underlying constitutional deprivation, the court necessarily concludes that she also has not sufficiently carried her summary judgment burden of setting forth proof of a causal link between the alleged policy and the constitutional harm, e.g., that the policy is the "moving force" behind the violation. Thus, the court finds overall that Stephens has failed to raise a genuine issue of material fact regarding two of the three requisite elements of municipal liability, an official policy or custom, and a constitutional violation whose "moving force" is the policy or custom. Dallas County is entitled to judgment as a matter of law on Stephens' section 1983 claim.

### D.   State Law Claim

Stephens' remaining claim against Dallas County is for intentional infliction of emotional distress under Texas law. Defendant Dallas County argues that it cannot

be liable to Stephens on this claim because it has not waived sovereign immunity under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code § 101.021(2).

Although a county does not enjoy immunity with respect to federal claims, under state law a county is a governmental unit protected by the doctrine of sovereign immunity. *Travis County v. Pelzel & Associates, Inc.,* 77 S.W.3d 246, 248 (Tex. 2002); Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Absent legislative consent or a waiver of immunity, a county and its officials are protected from suit. *Texas Dept. of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex. 2004). The Texas Tort Claims Act provides for such a waiver in limited circumstances. Tex. Civ. Prac. & Rem. Code § 101.025; *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex. 1994). The statute permits governmental liability for personal injury or death "caused by a condition or use of tangible personal or real property." *Id.*

Stephens has not alleged that Johnson's death was caused by the condition or use of tangible personal or real property by the county, and has presented no competent summary judgment proof raising a material fact issue whether this claim falls within the scope of the statute's waiver of sovereign immunity. Accordingly, Dallas County is entitled to summary judgment on this claim.

IV. **Defendants' Objections to Exhibits Contained in Appendix to Plaintiff's Response to Defendants' Motion for Summary Judgment**

Defendants have lodged evidentiary objections to much of Stephens' summary judgment evidence. However, the court finds that it reaches the same conclusions as to Defendants' Motion for Summary Judgment whether or not it considers the disputed evidence. Thus, Defendants' Objections to Exhibits Contained in Appendix to Plaintiff's Response to Defendants' Motion for Summary Judgment are **denied as moot.**

V. **Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **granted**, and Stephens' claims are hereby **dismissed with prejudice.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed January 4th, 2007.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE